# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANESSA J. PEREZ,<br><br>            Plaintiff,<br><br>      v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>            Defendant. | Case No.  1:19-cv-01235-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 13, 14, 15) |

## I.

## INTRODUCTION

Vanessa J. Perez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from obesity, depressive disorder, anxiety disorder, asthma, and status post ovarian cancer.  For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 8, 17.)

1

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on May 4, 2015, and a Title XVI application for supplemental security income on May 30, 2015. (AR 101, 102.) Plaintiff's applications were initially denied on October 23, 2015, and denied upon reconsideration on February 24, 2016. (AR 129-134, 137-142.) Plaintiff requested and received a hearing before Administrative Law Judge Judith Kopec ("the ALJ"). Plaintiff appeared for a video hearing on August 18, 2017. (AR 40-78.) On March 17, 2018, the ALJ found that Plaintiff was not disabled. (AR 22-35.) The Appeals Council denied Plaintiff's request for review on July 20, 2019. (AR 3-5.)

### A.   Hearing Testimony

Plaintiff appeared and testified at a video hearing on August 18, 2017 with counsel. (AR 44-64.) Plaintiff was born on December 29, 1955, and lives with her parents. (AR 44-45.) Plaintiff is five foot four inches tall and weighs about two hundred and twenty pounds. (AR 45.) Plaintiff's parents support her and she receives $194.00 per month from the SNAP program for food. (AR 45.)

Plaintiff is able to drive. (AR 45.) Plaintiff has a little anxiety when she drives new places and had a lot of anxiety when she was driving to her job at Walmart because it was far and it was a new road. (AR 45.) Plaintiff drove herself to the hearing. (AR 45.) Plaintiff graduated from high school and is able to read and write simple things like a grocery list or a to-do list. (AR 46.)

Plaintiff worked as server in a small town restaurant doing typical waitressing duties. (AR 46-47.) She would lift a tub of dishes, about 25 pounds. (AR 47.) She also worked as a pension administrator for union plans and health plans. (AR 47.) She would process and calculate pension benefits for union employees. (AR 47.) She issued the monthly pension checks for the employees and prepared the annual actuarial reports. (AR 47.) She did all the administration for the particular plan. (AR 47.) Plaintiff would typically lift less than ten pounds. (AR 48.) Plaintiff worked for Walmart from September to the middle of December

1   2013. (AR 48.) Plaintiff was working about forty hours a week making $9.20 per hour. (AR
2   49.) She was an overnight stocker, stocking products. (AR 49.) She would lift about fifty
3   pounds with assistance. (AR 49-50.)

4   Plaintiff went back to work at Walmart because she needed income. (AR 50.) The work
5   was pretty hard but she was willing to take anything. (AR 50.) She had anxiety every day about
6   going to work. (AR 50.) The work was hard and she had neuropathy in her left foot from the
7   chemotherapy. (AR 50.) Her foot would go numb after about an hour. (AR 50.) The work was
8   seasonal and she was let go. (AR 50.) They could have asked to stay on but they did not. (AR
9   50.)

10  Plaintiff has looked for work. (AR 51.) She took the test for the County of Calaveras but
11  failed because she got anxiety and panicked. (AR 52.) Plaintiff also applied for jobs from Taco
12  Bell to the local food banks. (AR 52.) She got no responses from her applications. (AR 52.)

13  Plaintiff was diagnosed with a hernia after they removed the port for her chemotherapy.
14  (AR 52.) She had previously had symptoms but it was not diagnosed. (AR 52.) Plaintiff had
15  surgery for the hernia in March of 2015. (AR 52-53.) She still has some abdominal pain and
16  burning from the pulling of the mesh. (AR 53.) Her abdominal pain limits her ability to lift
17  heavy objects. (AR 53.) Plaintiff cannot lift more than a bag of groceries. (AR 53.)

18  Plaintiff was diagnosed with cancer in November of 2011. (AR 53.) She has had six
19  rounds of chemotherapy and a full hysterectomy. (AR 53.) Her follow up tests have been fine.
20  (AR 61.) The outcome of her cancer was pretty good because it was contained, but it can
21  reoccur other places. (AR 61.) She has neuropathy in her left foot that is residual from the
22  chemotherapy. (AR 54.) Since her cancer diagnosis Plaintiff has depression and anxiety. (AR
23  54.) Plaintiff is fatigued during the day and does not do anything. (AR 54.)

24  Plaintiff gets up around 10:00 and watches a soap opera. (AR 54.) She makes dinner and
25  then goes back to watching television until she falls asleep. (AR 54.) Plaintiff lies down most of
26  the day, about six hours in an eight hour day. (AR 54.)

27  Plaintiff sees a psychiatrist for medication once every three months and a counselor every
28  two to three weeks. (AR 55.) Sometimes Plaintiff is not able to see the counselor because she is

1  very busy and Plaintiff will not be able to see her for a month or so. (AR 55.) Plaintiff saw her
2  in June and then missed an appointment. (AR 55.) Plaintiff's next appointment is in September.
3  (AR 55.) Plaintiff feels hopeless, sad, and worthless. (AR 55.) Plaintiff has crying spells
4  whenever she has to talk about all "this, whenever she has to sit with anyone or tell them how
5  she feels." (AR 55.)

6        Plaintiff isolates herself from family members. (AR 55.) Twice a week she will not get
7  out of bed until she feels like it and then will just move to the couch. (AR 56.) Plaintiff has
8  times when she does not want to get showered and dressed. (AR 56.) Prior to coming to the
9  hearing, she had not showered for a week. (AR 56.) She always waits until the last minute to
10 get ready when she has to go somewhere. (AR 56.) Plaintiff does not have good days, only bad
11 days. (AR 56.) She has bad days three to four times a week. (AR 56.) Once every couple of
12 months, Plaintiff will think about hurting herself because she feels like she has nothing to
13 contribute. (AR 56.)

14       Plaintiff has anxiety when she has to drive or go somewhere new. (AR 56.) Plaintiff
15 waited to go to the pharmacy for three days until she woke up with horrible dreams and had a
16 major meltdown because she did not get her medication on time. (AR 56.) Plaintiff has anxiety
17 attacks at least every other day and feels like she cannot breathe. (AR 56.) She tried doing a
18 little gardening but does not do that anymore. (AR 56.) She does not clean the house or do her
19 laundry. (AR 56.) She might wash the dishes. (AR 56.) Plaintiff watches the soap opera but
20 does not really pay attention. (AR 56.) Plaintiff watches This is Us and is able to pay attention
21 and follow along for the full hour. (AR 57.)

22       Plaintiff has problems with her short term memory. (AR 57.) She cannot remember her
23 passwords, phone numbers or addresses, or doctor's appointments. (AR 57.) She has trouble
24 remembering names. (AR 57.) Plaintiff can only do chores around the house for ten to twenty
25 minutes. (AR 58.) She will load the dishwasher and then go sit down. (AR 58.) She has a lot
26 of fatigue and cannot breathe. (AR 58.)

27       Plaintiff's therapist recommended that she go do some volunteer work, but she did not
28 go. (AR 59.) Plaintiff does some home design on her computer. (AR 59.) But she does not do

4

that every day and not every week. (AR 59.) The program lets you design a room. (AR 59.) At first she was excited about it, but she got bored with it. (AR 59.) It has been several weeks since Plaintiff worked on it. (AR 59.) Plaintiff looks at Facebook. (AR 60.) Plaintiff is excited to see her children and grandchildren, but only sees them once or twice a year. (AR 61.)

Plaintiff had planned on continuing working at the pension company but then she got cancer. (AR 60.) She could have stayed off a year after she got cancer but she went back to work. (AR 61.) She went back to work for eleven weeks and was let go. (AR 61.) They gave a number of reasons for letting Plaintiff go, but the truth was that they were losing a client and her supervisor chose her to let go. (AR 60.) Plaintiff heard some questions about her age, and it seemed like her skills, the things she thought she could do, were no longer valuable. (AR 61.) She tried to be positive, but with no health insurance she could not get basic medical tests. (AR 60.) Until Plaintiff moved, she had no way to check if her cancer was returning and she got worse day by day. (AR 60-61.) When she moved in with her parents it got worse because she would just sit on the couch all day. (AR 61.) Plaintiff tried to find jobs because she wanted to work. (AR 61.) She finally decided to need some kind of help because she could not take it. (AR 61.)

Dr. Abby May, a vocational expert ("VE") also testified at the hearing. (AR 64-77.)

**B.    ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff meets the insured status requirements of the Social Security Act through March 30, 2018.
- Plaintiff has not engaged in substantial gainful activity since the alleged onset date of May 21, 2012.
- Plaintiff has the following severe impairments: obesity, depressive disorder, anxiety disorder, asthma, and status post ovarian cancer.
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.
- Plaintiff can lift, carry, push or pull 20 pounds occasionally and 10 pounds

frequently. She can sit for six hours and stand and/or walk for two hours. She must be able to alternate positions for up to 10 minutes after every hour, but is able to remain on task. She can frequently climb ramps, stairs, ladders, ropes or scaffolds. She can occasionally be exposed to pulmonary irritants. She can have frequent one-to-one direct contact with the public and is not limited working in proximity to them. She can work in an environment where productivity is governed by shift or workday without strict quota requirements.

- Plaintiff is capable of performing past relevant work as an administrative assistant. This work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity.

- Plaintiff has not been under a disability, as defined in the Social Security Act, from May 21, 2012, through the date of the decision.

(AR 27-34.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

---

[2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. §404.1501 et seq., however Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq. The regulations are generally the same for both types of benefits. Therefore, further references are to the disability insurance benefits regulations, 20 C.F.R. §404.1501 et seq.

> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred by improperly considering the opinion of the consultative examiner's opinion of Plaintiff's mental limitations and finding that she was capable of skilled work. Defendant counters that, as she was required to do, the ALJ properly considered the medical opinions in the record and provided legitimate and specific reasons to reject the consultative examiner's opinion. Plaintiff replies that the ALJ failed to provide legitimate and specific reasons to reject the consultative examiner's opinion that Plaintiff was limited to simple one and two step instructions and Defendant is relying on post hoc rationalizations that were not cited by the ALJ.

### A.   Medical Opinion

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). "Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(1)-(2)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)(3)). The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957.

Plaintiff argues that the ALJ erred in evaluating the medical evidence and that her concentration is impaired due to her severe depressive and anxiety disorder. Plaintiff contends

that the opinion of Dr. Kalman supports her contention that she is more limited in her mental abilities than the ALJ found.  However, "the key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled."  Jamerson v. Chater, 112 F.3d 1064, 1067 (9th Cir. 1997).

The ALJ considered that the state agency physicians, Dr. Kresser and Dr. Campbell, on October 17, 2015, and February 24, 2016 respectively, had both reviewed the record and determined that Plaintiff had only mild restrictions in the areas of activities of daily living, social functioning, and concentration, persistence or pace and did not have a severe mental impairment.  (AR 30, 84-85, 95-96, 109, 119.)  The ALJ gave partial weight to these opinions because they did not have the benefit of reviewing Plaintiff's mental health records from late 2016 through 2017 and therefore did not have a complete understanding of Plaintiff's conditions.  (AR 30.)  The ALJ found that Plaintiff's mental limitations were severe.  (AR 30.)

With regard to Plaintiff's mental impairments, the ALJ considered that Plaintiff alleged to have developed depression and anxiety after she lost her job in 2012.  (AR 31, 447.)  At an initial examination by Dr. Kalantarzadeh in February 2015, Plaintiff was diagnosed with major depressive and anxiety disorder.  (AR 31, 348-350.)  In February 2016, Plaintiff was reported having relationship issues with her parents and feeling worried about everything and she was not fully compliant with her medication.  (AR 31, 487.)  Plaintiff did report that she was overall doing okay on her current medications.  (AR 487.)

In February 2017, Plaintiff reported doing well with her medications with no side effects and that she was more active and doing more around the house.  (AR 31, 471.)  While she was being treated by Dr. Kalantarzadeh, Plaintiff was also seeing a licensed social worker.  (AR 31.)  The social worker reported in August 2015 that Plaintiff was volunteering and began writing to address her symptoms and problems associated with her major depressive disorder.  (AR 31, 455.)  During a visit in 2016, Plaintiff reported being in a stable emotional state, although she was continuing to have problems with her parents.  (AR 31, 486.)  Plaintiff reported that she was emotionally stable with no severe lows.  (AR 486.)  Plaintiff was diagnosed with a personality

disorder by the social worker and Dr. Kalantarzadeh.  (AR 32, 467, 478.)

The ALJ found that Plaintiff "undoubtably has mental health problems which have adversely affected her ability to function." (AR 32.)  However, Plaintiff's course of treatment and examination results show that the problems and symptoms do not preclude her from working. (AR 32.)  The ALJ found that while there is objective medical evidence documenting Plaintiff's impairments, "her course of treatment, namely medications and therapy, show a level of manageability." (AR 32.)

The ALJ considered the opinion of consultative examiner, Dr. Kalman, who examined Plaintiff in August 2015.  (AR 32, AR 447-450.)  Dr. Kalman diagnosed Plaintiff with persistent depressive disorder related to life circumstances, namely unemployment.  (AR 32, 450.)  Dr. Kalman opined that Plaintiff  was able to interact and relate with supervisors and coworkers; deal with the public; understand, remember and carry out simple one and two-step job instructions; maintain attention, concentration and memory; and withstand the stress and pressures associated with daily work.  (AR 32, 449-450)  The ALJ found that Dr. Kalman's opinion is consistent with evidence of Plaintiff's mental impairments, but was insufficiently restrictive.  (AR 32.)  The ALJ noted that Dr. Kalman's observations that Plaintiff exhibited good judgment and logical thought belied the opinion that she can only carry out simple one and two-step jobs.  (32, 448-449.)  The ALJ found little objective evidence in Plaintiff's medical record to support the mental impairments opined by Dr. Kalman.  (AR 32.)

Plaintiff argues that Dr. Kalman's findings demonstrate that Plaintiff has an impairment in attention and concentration.  While Plaintiff argues that the treatment record also demonstrates impairment in concentration and attention, she points to no such findings in the record.  The Commissioner argues that the ALJ accepted all of the limitations opined by Dr. Kalman other than the finding that she could only understand and carry out simple one and two step instructions because it was inconsistent with Dr. Kalman's own findings and the objective medical evidence in the record.  Defendant points out that while Plaintiff argues that Dr. Kalman's limitation to one and two step instructions was due to her limitations in concentration and attention, Dr. Kalman found that Plaintiff was able to maintain concentration and attention.

1   Plaintiff replies that the ALJ relies on reasons not stated by the ALJ.

2   The ALJ specifically found that Dr. Kalman's limitation to simple one and two step instructions was inconsistent with the examinations findings including that Plaintiff had logical thought process and exhibited good judgment.  (AR 32.)  Dr. Kalman found that Plaintiff was able to understand, remember, and carry out simple one and two step instructions, (AR 449), but as Defendant argues, he also found that Plaintiff was able to maintain attention, concentration, and memory (AR 450).  On examination, Dr. Kalman noted that Plaintiff was cooperative and her speech had average rate and volume, and she had good eye contact.  (AR 448.)  Plaintiff was alert and oriented to person, place, date and situation.  (AR 448.)  She was able to recall two of three objects at five minutes and was able to repeat five digits forward and four backward.  (AR 448.)  Plaintiff could do serial 3s with two errors.  (AR 448.)  She was able to add, subtract and multiply.  (AR 448.)  She was able to calculate that she would receive 80 cents change from $1.00 if she bought two oranges at ten cents each.  (AR 448.)

Plaintiff demonstrated average intelligence.  (AR 448.)  She could recall four of the past five Presidents.  (AR 448.)  Her abstractions were intact.  (AR 448.)  She stated that an orange and an apple were both fruit.  (AR 448.)  She interpreted the proverb "you can't judge a book by its cover" well, stating "you can't ever tell how someone is just by looking at them."  (AR 448.)  Insight into her mental illness and judgment were good.  (AR 448.)

Plaintiff stated that if she found a stamped, addressed envelope on the ground she would "'put it in the mailbox," and if she were the first person in a theater to see fire, she would "pull fire alarm."  (AR 449.)

Plaintiff's mood was depressed and her affect was restricted.  (AR 449.)  She denied suicidal and homicidal thoughts.  (AR 449.)  Vegetative signs included insomnia (alternating with hypersomnia), 50 pound weight gain, and decreased memory.  (AR 449.)

Plaintiff's form of thought was logical and goal directed.  (AR 449.)  There were no loose associations, no mood swings and no emotional lability.  (AR 449.)  Plaintiff reported no auditory or visual hallucinations and no delusions were elicited.  (AR 449.)

Plaintiff reported that she did her own shopping, cooking and housekeeping.  (AR 449.)

She was able to manage her own transportation, could care for her own personal hygiene, and could pay her own bills. (AR 449.) Dr. Kalman opined that Plaintiff was 1) able to interact and relate with supervisors and co-workers; 2) able to deal with the public; 3) able to understand, remember and carry out simple one and two-step job instructions; 4) able to maintain attention, concentration and memory; and 5) able to withstand the stress and pressures associated with daily work activities. (AR 450.)

Internal inconsistences within a physician's opinion is a specific and legitimate basis for rejecting the opinion. Morgan v. Comm'r, 169 F.3d 595, 603 (9th Cir. 1999). The ALJ reasonably found that Dr. Kalman's findings that Plaintiff's thought process was logical and goal oriented and that she had good judgment was inconsistent with the opined limitation, especially given that Dr. Kalman found that Plaintiff was able to maintain attention, concentration, and memory.

The ALJ also found that Dr. Kalman's opinion that Plaintiff was limited to simple one and two-step instructions was inconsistent with the objective findings in Plaintiff's medical records. Inconsistency with the objective findings in the medical record are specific and legitimate reasons to reject a physician opinion. See Thomas, 278 F.3d at 957 (9th Cir. 2002) (clinical findings); Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (inconsistency with medical record); Morgan, 169 F.3d at 600–02 (inconsistency with medical record).

Plaintiff argues that the medical record demonstrates that she had difficulty with concentration and attention citing findings that she was guarded, with an anxious and constricted affect. However, review of the medical records demonstrates that there is substantial evidence to support the ALJ's findings. As the ALJ noted, Plaintiff reported that she responded well to her medication and was stable. (AR 471, 486.) Also, there are no findings of any impairment to concentration or attention in the treatment record, which generally shows that Plaintiff had normal mental examination noting that she was alert and oriented, had normal rate and rhythm of speech without pressure, fair insight, linear and goal directed thinking despite findings of anxiety or depression. (AR 467, 476, 479, 481, 482, 487, 489, 493.) In fact, in February and May 2017, Dr. Kalantarzadeh noted that Plaintiff's recent and remote memory were intact. (AR 471, 500.)

There are no objective findings in the treatment record that Plaintiff had difficulty with concentration and attention. Substantial evidence supports the ALJ's finding that Dr. Kalman's opinion that Plaintiff was limited to simple one and two step instructions is not supported by the findings in the medical record.

Relying on Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008), Plaintiff argues that the ALJ's finding she was moderately limited in concentration, persistence or pace belies her finding that Perez can engage in skilled work. In Stubbs-Danielson, the appellate court held that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." Stubbs-Danielson, 539 F.3d at 1174. In that case, the claimant was claiming to be limited to work in a sheltered workshop and the court found that the limitation to simple, routine, repetitive work adequately incorporated the claimant's limitations related to pace and the other mental limitations regarding attention, concentration, and adaption. Id. Contrary to Plaintiff's assertion, Stubbs-Danielson does not stand for the proposition that finding a claimant to have moderate limitations at step two would belie a finding that the claimant can perform more than simple repetitive work.

Step two is a "de minimis screening devise to dispose of groundless claims." Smolen, 80 F.3d at 1290. An ALJ can only find that a claimant's impairments or combination of impairments are not severe when her conclusion is clearly established by medical evidence. Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting S.S.R. 85-28). In considering an impairment or combination of impairments, the ALJ must consider the claimant's subjective symptoms in determining their severity. Smolen, 80 F.3d at 1290. In the instant case, the ALJ considered Plaintiff's ability to concentrate, persist, or maintain pace at step two and found that Plaintiff had moderate limitations. (AR 29.) He noted that Plaintiff contended that she had limitations in concentrating, focusing, and completing tasks but she "stated that she is also able to prepare meals, complete some housework (e.g., cleaning, laundry, vacuuming, and watering plants), and watches TV." (AR 29, 287-294.)

However in determining Plaintiff's residual functional capacity, the ALJ found that

Plaintiff's symptom testimony was not entirely credible because she was not compliant with her treatment; was able to engage in activities of daily living such as driving, cooking, and watching television; and due to her inconsistent statements regarding her daily activities. (AR 32.) The ALJ also considered that the objective medical evidence showed that there was a level of manageability of her symptoms and that Plaintiff was able to testify at the hearing without any major problems aside from her emotional responses. (AR 32.) Plaintiff has not challenged the adverse credibility finding and the issue has therefore been waived. Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014). The fact that the ALJ found Plaintiff to have moderate limitations in concentration, persistence and pace at step two does not preclude the ALJ from determining that she is capable of more than simple work upon reviewing and evaluating all the evidence in the record.

Plaintiff also argues that the ALJ rejected all medical opinions in the record and therefore the residual functional capacity is nothing more than an improper medical opinion. Defendant counters that the ALJ properly evaluated the medical evidence in the record as a whole as required by 20 C.F.R. § 404.1545(a) in determining Plaintiff's residual functional capacity. Section 404.1545 provides that the Commissioner "will assess your residual functional capacity based on all the relevant evidence in your case record." 20 C.F.R. § 404.1545(a).

Plaintiff's citation to Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975), is misplaced. In Day, the ALJ, who was not qualified as a medical expert, went "outside the record to medical textbooks for the purpose of making his own exploration and assessment as to claimant's physical condition." 522 F.2d at 1156; see also; Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, ... the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination."); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). That is not the case here where the ALJ was presented with conflicting medical opinions regarding Plaintiff's functional abilities. The ALJ did not evaluate the raw data in the record and make independent medical findings, but the agency physicians opined that Plaintiff had only mild limitations and no severe mental

impairments, while Dr. Kalman opined that Plaintiff was able to understand, remember and carry out simple one and two-step job instructions.  It was for the ALJ to resolve this conflict in the medical evidence.  The ALJ considered the medical record as a whole and opined limitations beyond those opined by the physicians based on the medical evidence and Plaintiff's testimony that he deemed credible.  It is for the ALJ to determine credibility, resolve conflicts in testimony, and resolve ambiguities in the record, but his findings must be supported with specific and rational reasons.  <u>Reddick v. Chater</u>, 157 F.3d 715, 722 (9th Cir. 1998).  While Plaintiff seeks a finding that she is limited to only unskilled work, where the evidence is susceptible of more than one rational interpretation, the ALJ's conclusion must be upheld.  <u>Burch</u>, 400 F.3d at 679.

The ALJ provided specific and legitimate reasons to for the weight provided to Dr. Kalman's opinion that are supported by substantial evidence in the record and did not err by rejecting the opinion of Dr. Kalman that Plaintiff was able to understand, remember and carry out simple one and two-step job instructions.

**V.**

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ did not err in evaluating Dr. Kalman's opinion.  Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Vanessa J. Perez.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:  **July 31, 2020**

UNITED STATES MAGISTRATE JUDGE